*E-Filed 7/25/14*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DAVID CHANCE,

    Plaintiff,

    v.

M. CATE, et al.,

    Defendants.

No. C 11-4279 RS (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff is a state prisoner proceeding *pro se* in this civil rights action brought under 42 U.S.C. § 1983 in which he alleges that defendants Anthony, Brandon, Milligan, McGuyer, Pieren and Pimental, employees of Pelican Bay State Prison, violated his First and Fourteenth Amendment rights by confiscating several items of his incoming and outgoing mail. Defendants move for summary judgment. For the reasons stated herein, defendants' motion for summary judgment is GRANTED in favor of all defendants as to all claims.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff is an inmate at Pelican Bay State Prison and a validated member of the Aryan Brotherhood prison gang. (Defs.' Mot. for Summ. J. ("MSJ") at 1.) At all times relevant to this action, plaintiff was

housed in Pelican Bay's Security Housing Unit ("SHU") where inmates are subject to additional prison-mandated restrictions and conditions. (Am. Compl. at 9.) In particular, members of SHU: (1) are required to have all of their incoming and outgoing mail screened by an assigned Institutional Gang Investigation Officer; and (2) are forbidden from engaging in any form of income-producing business activity. (*Id.*)

This action relates to ten pieces of plaintiff's mail defendants withheld in 2007. In December 2007, three pieces of plaintiff's outgoing mail to "Jokes, c/o Easyriders" ("Easyriders") and three pieces of outgoing mail to "Humor Editor at Larry Flynt Productions, Inc." ("LFP") were seized by defendant Milligan, a Pelican Bay correctional officer, because they: (1) contained glued-on items in violation of Pelican Bay Procedural Order 205; (2) contained jokes meant to be sold in furtherance of plaintiff's unauthorized business; and (3) listed a fictitious return address. (MSJ at 6–9.) Plaintiff listed a fictitious return address on these mailing items in order, according to defendants, to circumvent Pelican Bay's prohibition on plaintiff's unauthorized business activity of selling jokes to magazines. (*Id.*) He listed his father's address as the return address. So, rather than having the purchasers of his jokes (i.e. Easyriders and LFP) mail their payments directly to Pelican Bay, where prison guards would confiscate the proceeds during mail screening, the mail would be sent to his father, possibly to avoid confiscation of the proceeds. (*Id.*) Defendant Brandon, a correctional officer at Pelican Bay, authorized the withholding of these items. (*Id.* at 5.) Prison officials notified plaintiff of each of these mail stoppages by sending him "Stopped Mail Notifications." (*Id.* at 6–9.)

On June 6, December 6, and December 19, defendant Milligan also withheld incoming mail addressed to plaintiff from his father because these letters contained information about proceeds received by plaintiff's father from plaintiff's unauthorized joke-selling business. (*Id.*) In these letters, plaintiff's father detailed: (1) the names of the companies that sent payments; (2) the amounts received; and (3) the check numbers posted on each of the received checks. (*Id.*) Defendant Anthony, a correctional officer, authorized the withholding

of the letter on June 6 and defendant Brandon authorized the withholding of the letters from December 6 and December 19. (*Id.* at 5.) Prison officials notified plaintiff of each of these mail stoppages by sending him "Stopped Mail Notifications." (*Id*. at 6–9.)

Lastly, on December 3, 2007, defendant Milligan searched and withheld a piece of plaintiff's outgoing mail to Brian Chance, plaintiff's nephew. (*Id*. at 6.) This correspondence contained two cards each of which had pictures affixed to them using glue in violation of Pelican Bay Operating Procedure 205. (*Id*.) When Milligan inspected these items by separating the glued-on pictures from the cards he discovered that the glued-on pictures were being used to conceal writing underneath. (*Id*.) Defendant Brandon authorized the withholding of these items and plaintiff was issued a "Stopped Mail Notification." (*Id*. at 5–6.)

In response to these stoppages, plaintiff filed a habeas petition with the Del Norte County Superior Court related to the same mail stoppages at issue in this case. (*Id*. at 12.) In that matter, he challenged prison officials' denial of his request to engage in the business of selling jokes to magazines. (*Id*.) He specifically stated that he was disputing the December 2007 confiscation of his outgoing mail to Easyriders and LFP as well as the December 2007 confiscation of his incoming mail from his father. (*Id*.) Plaintiff also attached copies of the "Stopped Mail Notifications" for each of these items as evidence in support of his informal briefings on his habeas petition. (*Id*.)

The superior court denied plaintiff's petition and held that even if plaintiff's constitutional rights were infringed by these mail stoppages, the prison's actions were valid and constitutional because they advanced a "legitimate penological interest" in preventing petitioner from generating revenue that could be used to further the activities of the Aryan Brotherhood gang. (Defs.' Request for Judicial Notice (Docket No. 48), Ex. B. at 5–7.) The state court also found that plaintiff's freedom of expression was not infringed by a prohibition on his sale of jokes because plaintiff could still submit his jokes to magazines as long as he did not receive compensation for such submissions. (*Id*.)

# DISCUSSION

## I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## II.  Motion for Summary Judgment

### A.  Defendants Pieren, Pimental, and McGuyer

Plaintiff concedes that defendants Pieren, Pimental and McGuyer were not involved in the mail stoppages at issue in this case. (Pl.'s Opp. to MSJ at 17.)  Accordingly, summary

judgment is GRANTED in favor of defendants Pieren, Pimental, and McGuyer as to all claims because these defendants did not cause "the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

### B.      Mail to Easyriders and LFP

Defendants assert that plaintiff's claims related to the mail to Easyriders and LFP (and the mail sent by his father to plaintiff) are barred by the doctrines of (1) *res judicata*, and (2) collateral estoppel.

#### 1.      Res Judicata

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). There is no exception to the rules of claim and issue preclusion for federal civil rights actions under 42 U.S.C. § 1983 — the Supreme Court has made it clear that a § 1983 claim brought in federal court is subject to principles of claim and issue preclusion by a prior state court judgment. *See id.* at 84; *Allen v. McCurry*, 449 U.S. 90, 97–98 (1980). Even state habeas proceedings have a preclusive effect on later § 1983 actions. *See Silverton v. Dep't of Treasury,* 644 F.2d 1341, 1346–47 (9th Cir. 1981) (state habeas proceeding precludes identical issue from being relitigated in subsequent § 1983 action if state habeas court afforded full and fair opportunity for issue to be heard).

*Res judicata*, commonly known as claim preclusion, prohibits a second lawsuit involving the (1) same controversy (2) between the same parties or their privies (3) so long as the prior lawsuit was a final judgment on the merits. *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896–97 (2002). Claim preclusion also applies to those claims which could have been litigated as part of the prior cause of action. *See Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 786 (9th Cir. 1986). A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a

new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986).

Plaintiff's claims are barred by *res judicata* because the record shows that all elements of that doctrine are present. The first element is met because the issues in this case are part of the "same controversy" previously adjudicated in plaintiff's prior habeas action. In his habeas petition, plaintiff asserted that his sale of jokes to magazines should not be restricted as an unauthorized business activity. (MSJ, Ex. A.) In relation to this claim, plaintiff specifically presented the outgoing correspondence stopped on December 4, 2007 and December 10, 2007 to LFP and Easyriders and the incoming letter from plaintiff's father stopped on December 6, 2007 as examples of alleged prison-mandated restrictions on his business dealings. (*Id.*) The withholding of these items is again at issue in the current case. In addition, in the "Denial to the Return to the Order to Show Cause" at the state court level, plaintiff specifically raised a First Amendment claim related to these withholdings. (MSJ, Request for Judicial Notice, Ex. H.) Thus, it is apparent that plaintiff's state habeas petition and the instant § 1983 complaint are substantially the same controversy.

The remaining elements of *res judicata* are also present. The parties involved in plaintiff's state habeas petition and instant § 1983 complaint are substantially the same. Plaintiff's habeas petition was directed at officials at Pelican Bay, who are named in the instant action.

Finally, there is no indication that the decision reached by the state court in the previous habeas proceeding was reached on any basis other than the actual merits of the case. *See Barker v. Fleming*, 423 F.3d 1085, 1092 (9th Cir. 2005) (in the federal habeas context, a state court judgement is "final" and "on the merits" if the court finally resolved the rights of the parties on the substance of the claim, rather than on the basis of a procedural or other rule precluding state review on the merits). During the prior habeas proceeding, the superior court decided on the merits that plaintiff's constitutional rights were not violated when prison officials withheld plaintiff's mail because such actions were related to the "legitimate penological interest [in preventing] petitioner from selling jokes to magazines." (Defs.'

Request for Judicial Notice (Docket No. 48), Ex. B. at 5–7.)  All elements of *res judicata* being present, plaintiff's claims that defendants violated his constitutional rights by withholding mail related to his unauthorized business dealings are barred.  Accordingly, summary judgment is GRANTED in favor of defendants on that basis.

### 2.   **Collateral Estoppel**

Defendants also assert that the action is barred by the doctrine of collateral estoppel. Under California law, collateral estoppel, also known as issue preclusion, prohibits the re-litigation of issues decided in a prior proceeding if:  (1) the issue is identical to the one decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding was final and on the merits; and (5) the party against whom preclusion is sought is the same or is in privity with the party from the prior proceeding. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (Cal. 1990).  "The party asserting collateral estoppel bears the burden of establishing these requirements." *Id.*

Here, the state superior court's decision satisfies the above requirements and therefore plaintiff's federal suit is barred.  As to the first element, plaintiff relies on the exact same set of facts and evidence for the instant complaint as he did in his state habeas action.  Plaintiff also addresses an identical underlying issue in both actions:  whether his constitutional rights were violated when the defendants withheld his mail.

The other elements of collateral estoppel are also present.  The issue was actually litigated and necessarily decided, as it was raised by the pleadings and specifically addressed by the state court.  *Barker v. Hull,* 191 Cal. App. 3d 221, 226 (1987) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section.") (citations and quotations omitted).  Also, as previously stated, the decision was reached on the merits. Lastly, the parties here are the same as those in the prior action.  Because all the elements of collateral estoppel are present, plaintiff's action as to these claims is barred.  Accordingly,

summary judgment is GRANTED in favor of defendants on this ground.

### C. Mail to Brian Chance

Plaintiff's mail to his nephew, Brian Chance, was withheld because it contained glued-on items, a violation of Pelican Bay Operating Procedure 205 which states that "[i]tems unable to be searched without [being destroyed]," and "[g]lued-on items" are considered unauthorized mail that cannot be mailed out of the prison. (MSJ, Soderlund Decl. Ex. E.) Plaintiff alleges that defendants' actions violated his (1) First Amendment, and (2) due process rights.

#### 1. First Amendment

Although prisoners have a First Amendment right to send and receive mail, prison officials may adopt regulations or practices that impinge on a prisoner's First Amendment rights if the regulations are "reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). The *Turner* standard applies to regulations concerning all incoming mail received by prisoners from non-prisoners. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). In the case of outgoing mail from prisoners to non-prisoners, there is an exception to the *Turner* standard. *Id.* at 411–12. This exception dictates that regulations on outgoing mail are justified only if: (1) the regulation or practice in question furthers "an important or substantial government interest unrelated to the suppression of expression," and (2) the limitation on First Amendment freedoms is no greater than necessary to further the particular government interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (overruled on other grounds by *Thornburgh*, 490 U.S. at 413–14). In *Procunier,* the Court recognized that a penal institutions interest in maintaining "security, order, and rehabilitation" is an "important or substantive government interest." 416 U.S. at 413.

Pelican Bay Operating Procedure 205's ban on the mailing of correspondence with glued-on items, satisfies the requirements of *Procunier*. *See id.* This procedure was put in place to prevent prisoners from transmitting hidden illicit messages under glued-on items affixed to correspondence. Plaintiff's specific case highlights the effectiveness of this

procedure because Officer Milligan specifically targeted the piece of outgoing mail from plaintiff to Brian Chance because it contained glued-on items. (MSJ at 24.) After Milligan searched the correspondence, he discovered that the glued-on pictures attached to the cards were in fact being used to conceal hidden messages. (*Id*.) Thus, this operating procedure effectively serves the function of maintaining prison security and order in furtherance of "an important or substantial government interest unrelated to suppression of expression." *See Procunier*, 416 U.S. at 413.

Operating Procedure 205 also satisfies *Procunier* because the procedure is not "greater than necessary to further the particular government interest involved." *See id.* As previously discussed, glued-on items in correspondence are often used by prisoners to hide illicit messages. Accordingly, prison procedures which specifically target such items for search and withholding are not overly broad because they are directly designed to help prison officials achieve the "important or substantive government interest[s]" of "security, order, and rehabilitation." *Id.*

Operating Procedure 205 is also not overly broad because it does not seek to deprive prisoners of all means of expression. *See id*. The procedure is primarily concerned with monitoring a discrete class of correspondence which prison officials have identified as a favored method used by prisoners to communicate potentially dangerous information. In plaintiff's case, his mail to Brian Chance would not have been withheld if plaintiff had simply kept the pictures and cards separate rather than affixing the pictures to the cards using glue. (MSJ at 26–27.) It appears that plaintiff chose to glue the pictures onto the cards for the purpose of discretely hiding written messages, however. (*Id*. at 24.) In addition, the disputed pieces of stopped outgoing mail to LFP and Easyriders were not withheld solely because they contained glued-on items; these items were also withheld because they were directly related to the advancement of plaintiff's unauthorized business of selling jokes to magazines. (*Id*. at 6–7, 10.)

1  Accordingly, plaintiff has not shown a genuine dispute of material fact that Pelican
2  Bay Operating Procedure 205 or defendants' withholding of his correspondence with glued-
3  on items violated his First Amendment rights.  Summary judgment is GRANTED in favor of
4  all defendants as to this claim.

**2.  Due Process**

Plaintiff alleges that his Fourteenth Amendment due process rights were violated because his mail was taken without just cause and reasonable opportunity to object.  (Am. Compl. at 26–27.)  Although the due process clause protects persons against deprivation of life, liberty or property without adequate process, "due process rights for prisoners . . . are not absolute [and] are subject to reasonable limitations or retractions in light of the legitimate security concerns of the institution."  *Bell v. Wolfish*, 441 U.S. 520, 554 (1979).  Where deprivation of property is the result of a state procedure, a post-deprivation hearing may be adequate to satisfy due process when there is "[e]ither the necessity of quick action by the State or the impracticability of providing any meaningful pre-deprivation process." *Parratt v. Taylor*, 451 U.S. 527, 540 (1990) (overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327 (1986)).

Prior to searching prisoners' mail, prison officials cannot predict with sufficient certainty which items of mail may pose a threat to prison safety.  As a result, California law allows post-deprivation remedies to satisfy due process requirements in such cases.  Under title 15, California Code of Regulation Sections 3136 and 3137, prisoners have a right to appeal decisions by prison officials to withhold correspondence.  Plaintiff was informed of this post-deprivation remedy and plaintiff did in fact exercise his right to appeal the mail withholdings through several levels of review.  (Soderlund Decl. Exs. A-D.)  Thus, plaintiff was not deprived of his right to due process because the post-deprivation remedies in place were sufficient.  *See Parratt*, 451 U.S. at 540.  Summary judgment is GRANTED in favor of all defendants as to this claim.

### D.    Qualified Immunity

Defendants alternatively assert that summary judgement should be granted because they are entitled to qualified immunity against plaintiff's claims. Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because there was no constitutional violation, it is unnecessary to consider whether defendants are entitled to qualified immunity.

### CONCLUSION

Plaintiff has failed to show that there is a genuine dispute as to any material fact as to any of his claims. As a result, defendants' motion for summary judgment (Docket No. 88) is GRANTED in favor of all defendants (Anthony, Brandon, Milligan, McGuyer, Pieren and Pimental) as to all claims. The Clerk shall enter judgment in favor of all defendants, terminate Docket No. 88, and close the file.

**IT IS SO ORDERED**.

DATED:  July 25, 2014

RICHARD SEEBORG
United States District Judge